## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ALEXANDER CABOT, on behalf of himself and all other similarly situated persons, known and unknown,

      Plaintiff,

v.

NASHVILLE MANAGEMENT, INC. d/b/a/ CHARLIE'S CHICAGO,

      Defendant.

## COMPLAINT AT LAW

Plaintiff, Alexander Cabot ("Plaintiff"), on behalf of himself and all other similarly situated persons known and unknown, by and through his attorneys, Siegel & Dolan Ltd., complains against Defendant Nashville Management, Inc. d/b/a Charlie's Chicago ("Defendant" or "Charlie's"), as follows:

## NATURE OF ACTION

1. This is an action for damages caused by Defendant's violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1, *et seq.* ("IMWL"), and the Chicago Minimum Wage and Paid Sick Leave Ordinance, Mun. Cod. Chicago 1-24-010 *et seq.* ("Ordinance") for Defendant's failure to properly pay Plaintiff the prevailing minimum wage.

2. Defendant's actions, described herein, constitute wage theft and gave Defendant an unfair competitive advantage over other law-abiding businesses.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction for the FLSA claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). This Court may exercise supplemental jurisdiction over the state law claims pursuant to 29 U.S.C. § 1367.

4. The unlawful employment practices described herein were committed within the state of Illinois, at Defendant's location in the city of Chicago. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

5. Plaintiff resides in and is domiciled in Chicago, Illinois.

6. Plaintiff was continuously employed by Defendant as an hourly employee from in or around November 2015 until February 26, 2018.

7. During his employment, he worked as a bartender, bar back, doorman and DJ.

8. At all times relevant to this action, Plaintiff was an "employee" of Defendant, as defined by the FLSA, 29 U.S.C. § 203(e)(1), the IMWL, 820 Ill. Comp. Stat. 105/3(d), and the Ordinance, Mun. Cod. Chicago 1-24-010.

9. Plaintiff, and all other unnamed Plaintiffs of the class, known and unknown (hereinafter referred to as "members of the Plaintiff Class"), are current and former tipped bartenders and bar backs of Defendant who have not been paid and are due minimum wages under the FLSA, IMWL, and Ordinance. As to the claims under the FLSA, similarly situated employees may opt in to this case to pursue claims under the Fair Labor Standards Act, 29 U.S.C. § 216(b).

10. Defendant is incorporated in Colorado and operates four "Charlie's" brand bar/nightclubs located in Illinois, Arizona, Nevada, and Colorado. Defendant owns and operates a fifth bar named "Paco's Ranch" in Puerto Vallarta, Mexico. Defendant is engaged in an

industry affecting interstate commerce. Charlie's is located at 3726 North Broadway Street, Chicago, Illinois 60613.

## FACTUAL ALLEGATIONS

11. Within the three (3) years preceding the filing of this Complaint, Plaintiff was formerly employed by Defendant and worked in various capacities as a bartender/bar back, doorman and DJ. Defendant paid Plaintiff different rates of pay for each of these positions.

12. Bartenders and bar backs are considered "tipped employees" who receive a portion of their compensation from tips given to them by customers.

13. Defendant's bartenders and bar backs have been paid a base wage that is less than the federal minimum wage and is less than the minimum wage of Illinois and the City of Chicago.

14. Based upon the nature of his work and the manner in which he was paid, Plaintiff was not exempt from the minimum wage provisions of the FLSA, 29 U.S.C. § 206, the IMWL, 820 Ill. Comp. Stat. 105/4, and/or the Ordinance, Mun. Cod. Chicago 1-24-030, during the relevant time period.

15. Plaintiff began working for Defendant in November 2015. At the time Plaintiff began his employment in November 2015, pursuant to the Ordinance, the minimum wage in Chicago was $10.00 per hour, and the tipped employee minimum wage was $5.45 per hour.

16. Effective July 1, 2016, pursuant to the Ordinance, the minimum wage in Chicago was increased to $10.50 per hour, and the tipped employee minimum wage was increased $5.95 per hour.

17. Effective July 1, 2017, pursuant to the Ordinance, the minimum wage in Chicago was increased to $11.00 per hour, and the tipped employee minimum wage was increased $6.10 per hour.

18. Beginning in February 2016, Plaintiff began working shifts as a doorman. He was told he would be paid $10.00 per hour for hours worked as a doorman.

19. Beginning in March 2016, Plaintiff began working shifts as a bartender/bar back. He was told he would be paid $5.45 per hour plus tips for hours worked as a bartender/bar back.

### Defendant's Unlawful Tip Pool

20. The FLSA, IMWL, and Ordinance permit an employer to pay tipped employees an hourly rate that is below the standard minimum wage. However, an employer's eligibility to do so lawfully is contingent upon the employer's compliance with the tip-credit provisions provided by the statutes.

21. Defendant has not met the federal, state, and local legal requirements to take a "tip credit" against the minimum wage for bartenders and bar backs.

22. During his employment, Plaintiff was not allowed to retain all of the tips he received from customers while working as a bartender. Rather, at the end of each shift, Charlie's bartenders, including Plaintiff, were required to pool their tips.

23. Defendant redistributed Plaintiff's and the other bartenders' tips to all of Defendant's employees, including doormen and managers.

24. Prior to on or about August 11, 2017, in addition to their non-tipped minimum wage, Defendant paid doormen a flat $20.00 from the daily tip pool at the end of their shift.

25. Beginning on or about August 11, 2017, for certain days, Defendant began paying doormen a share of the daily tip pool based upon the number of hours they worked that day instead of the flat $20.00. On days that Defendant did not pay doormen a share of the daily tip pool based on the number of doormen hours worked, doormen still received a flat tip out of $20.00 from the daily tip pool at the end of their shift.

26. In or around autumn 2017, Defendant established the standard practice of paying doormen a share of the daily tip pool based upon the number of hours they worked that day,

4

instead of a flat $20.00, on the second day employees worked as a doorman during weeks when they worked more than one doorman shift. At the end of the first day working a doorman shift, doormen still received the flat $20.00 tip out from the daily tip pool.

27. Doormen received as much as $150.00 to $200.00, or more, when Defendant paid doormen from the daily tip pool based upon the number of hours worked that day.

28. On certain days, doormen received a share of the daily tip pool based upon the number of hours they worked that day even when it was their first doorman shift that week.

29. Throughout Plaintiff's employment, Defendant paid managers a share of the daily tip pool based upon the number of hours they worked that day.

30. Doormen and managers primarily perform non-tipped work.

31. Doormen and managers do not customarily and generally receive tips from customers as part of their job.

32. At all relevant times, Defendant did not comply with the tip-credit provisions of the FLSA, IMWL, and Ordinance because they operated a tip pool that was rendered illegal by virtue of the participation by management and non-tipped employees. 29 C.F.R. § 531.59.

**Defendant Required Hourly Employees to Attend Weekly Meetings**

33. Charlie's is open to the public seven days a week, opening every day at 3:00 pm and closing at 4:00 am on Sunday through Friday. On Saturday, Charlie's closes at 5:00 am (Sunday morning).

34. Defendant required Plaintiff, and all other hourly employees, to attend mandatory weekly meetings. The mandatory weekly meetings typically lasted for two to three hours.

35. The mandatory weekly meetings were scheduled for times when Charlie's was closed to the public.

36. From at least November 2015 until the winter of 2017, Defendant scheduled the mandatory weekly meetings for Mondays. During the winter of 2017, Defendant changed the mandatory weekly meetings to Fridays.

37. Defendant used the mandatory weekly meetings to distribute employees' tips from the prior week, discuss company policies, inform employees about changes in inventory, review upcoming promotions/events, review employees' weekly schedules, and to review any other issues affecting Charlie's business. Plaintiff often took notes during the weekly meetings and distributed a summary of these notes to management and employees via email.

38. For all of 2016 and part of 2017, Defendant did not pay employees, including Plaintiff, for attending the weekly mandatory meetings.

39. On multiple occasions during 2016 and 2017, Plaintiff asked management at the weekly meetings why employees were not paid for attending the mandatory meetings. The typical response provided by Charlie's was, "meetings were unpaid because it was part of their job, and if they did not like it, there was the door."

40. Defendant told employees on numerous occasions during the mandatory weekly meetings that employees should not discuss work issues amongst each other.

41. On or around May 15, 2017, Defendant announced that Charlie's would begin paying employees the tipped employee minimum wage ($5.95 at that time) for time spent attending the weekly mandatory meetings.

42. Employees were not performing tipped work during the mandatory weekly meeting. Moreover, Defendant was not open for business during the time each mandatory weekly meeting was held. Thus, no tips by customers were ever given while employees attended the meetings.

43. Between May 15, 2017 and July 24, 2017, Defendant paid Plaintiff and all other hourly employees for attending the weekly mandatory meetings at the tipped rate of $5.95 per hour. The rate was increased to $6.10 per hour in July 2017.

44. Beginning on or around July 24, 2017, Charlie's told employees to clock-in for the mandatory meetings under "Door," which was the non-tipped minimum wage rate of $11.00 per hour.

45. Plaintiff and Charlie's other hourly employees were entitled under the law to be paid at the prevailing minimum wage for all hours worked.

46. Defendant did not pay Plaintiff and its other hourly employees the prevailing minimum wage for all hours worked.

47. Defendant was aware of its obligation to pay employees minimum wage and intentionally chose not to pay Plaintiff and its other hourly employees accordingly.

48. Defendant acted in bad faith in failing to compensate Plaintiff and its other hourly employees for the work they performed.

## COUNT I – FAIR LABOR STANDARDS ACT
**(Collective Action)**

49. Plaintiff incorporates paragraphs 1-48 as though fully set forth herein.

50. Pursuant to 29 U.S.C. § 206, Plaintiff and Charlie's other hourly employees worked for Defendant as non-exempt hourly employees, and were entitled to be compensated at the minimum wage rate for each hour worked.

51. Pursuant to 29 U.S.C. § 216(b), this action may be maintained by a plaintiff who has been damaged by Defendant's failure to comply with 29 U.S.C. §§ 206 – 207. Plaintiff attaches as Exhibit A his Notice of Consent to Become a Party Plaintiff in a Collective Action under the Fair Labor Standards Act.

52. Defendant failed to compensate Plaintiff and its other hourly employees at the applicable minimum wage rate for each hour worked in violation of the FLSA.

53. Defendant included non-tipped employees, specifically doormen and managers, in the daily tip pool distribution.

54. Defendant has not met the federal legal requirements to take a "tip credit" against the minimum wage for bartenders and bar backs.

55. Plaintiff and Charlie's other hourly employees are owed the full applicable minimum wage (as opposed to the tipped employee minimum wage) for all hours worked as a bartender and/or bar back.

56. Defendant also failed to pay Plaintiff and its other hourly employees at least the minimum wage for all hours they spent attending the mandatory weekly meetings.

57. Defendant knew about its obligations under the FLSA, and deliberately chose not to heed them. Thus, Defendant's failure to pay minimum wage is an intentional violation of the FLSA.

58. As a direct and proximate result, Plaintiff and Defendant's other hourly employees are owed back wages and liquidated damages pursuant to the FLSA.

WHEREFORE, Plaintiff Alexander Cabot on behalf of himself and all other similarly situated persons, known and unknown, respectfully requests that this Court enter judgment in his favor and enter an Order as follows:

a) Awarding back pay equal to the amount of all unpaid wages for the three (3) years preceding the filing of this Complaint to the present, according to the applicable statute of limitations for willful violations of the FLSA;

b) Awarding liquidated damages equal to the amount of unpaid wages pursuant to 29 U.S.C. § 216(b);

c) Awarding prejudgment interest, reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

d) Awarding Plaintiff such further and additional relief as the Court may deem just and proper.

## COUNT II – ILLINOIS MINIMUM WAGE LAW
### (Class Action)

59. Plaintiff incorporates paragraphs 1-48 as though fully set forth herein.

60. The matters set forth in this Count arise from Defendant's violations of the minimum wage provisions of the IMWL, 820 Ill. Comp. Stat. 105/4.

61. At all times relevant, Plaintiff and Defendant's other hourly employees were employed by Defendant as "employees" within the meaning of the IMWL, 820 Ill. Comp. Stat. 105/3(d).

62. At all relevant times, Defendant was an "employer" as defined in the IMWL, 820 Ill. Comp. Stat. 105/3(c).

63. Pursuant to 820 Ill. Comp. Stat. 105/4, Plaintiff and Defendant's other hourly employees were entitled to be compensated at the applicable State minimum wage rate for all hours worked.

64. Plaintiff and Defendant's other hourly employees were not paid proper minimum wages under the IMWL, 820 Ill. Comp. Stat. 105/1, *et seq*.

65. Defendant included non-tipped positions, specifically doormen and managers, in the daily tip pool distribution.

66. Defendant has not met the state legal requirements to take a "tip credit" against the minimum wage for bartenders and bar backs.

67. Plaintiff and Charlie's other hourly employees are owed the full applicable minimum wage (as opposed to the tipped employee minimum wage) for all hours worked as a bartender and/or bar back.

68. Defendant also failed to pay Plaintiff and its other hourly employees at least the minimum wage for all hours they spent attending the mandatory weekly meetings.

69. Defendant's conduct in failing to pay Plaintiff and its other hourly employees the minimum wage and inappropriate claiming of the "tip credit," as set forth above, violates the IMWL.

70. Pursuant to 820 Ill. Comp. Stat. 105/12(a), Plaintiff is entitled to recover unpaid wages earned in the three (3) years prior to the filing of the Complaint, plus statutory damages in the amount of two percent (2%) per month of the amount of underpayments.

WHEREFORE, Plaintiff Alexander Cabot, on behalf of himself and all other similarly situated persons, known and unknown, respectfully requests that this Court enter an order as follows:

a) Awarding judgment against Defendant in an amount equal to all unpaid wages owed to Plaintiff pursuant to the IMWL;

b) Awarding prejudgment interest on the unpaid wages in accordance with 815 Ill. Comp. Stat. 205/2;

c) Awarding statutory damages of 2% per month pursuant to the formula set forth in 820 Ill. Comp. Stat. 105/12(a);

d) Awarding reasonable attorneys' fees and costs incurred in filing this action; and

e) Ordering such other and further relief as this Court deems appropriate and just.

### COUNT III – CHICAGO MINIMUM WAGE AND PAID SICK LEAVE ORDINANCE
### (Class Action)

71. Plaintiff incorporates paragraphs 1-48 as though fully set forth herein.

72. The matters set forth in this Count arise from Defendant's violations of the minimum wage provisions of the ORDINANCE, Mun. Cod. Chicago 1-24-020 and 1-24-030.

73. At all times relevant, Plaintiff and Defendant's other hourly employees were employed by Defendant as "employees" within the meaning of the Ordinance, Mun. Cod. Chicago 1-24-10.

74. At all relevant times, Defendant was an "employer" as defined in the Ordinance, Mun. Cod. Chicago 1-24-10.

75. Pursuant to the Ordinance, Mun. Cod. Chicago 1-24-20, Plaintiff and Defendant's other hourly employees were entitled to be compensated at the applicable City of Chicago minimum wage rate for all hours worked.

76. Plaintiff and Defendant's other hourly employees were not paid proper minimum wages under the Ordinance, Mun. Cod. Chicago 1-24-10, *et seq*.,

77. Defendant included non-tipped positions, specifically doormen and managers, in the daily tip pool distribution.

78. Defendant has not met the legal requirements to take a "tip credit" against the minimum wage for bartenders and bar backs under the Ordinance.

79. Plaintiff and Charlie's other hourly employees are owed the full applicable minimum wage (as opposed to the tipped employee minimum wage) for all hours worked as a bartender and/or bar back.

80. Defendant also failed to pay Plaintiff and its other hourly employees at least the minimum wage for all hours they spent attending the mandatory weekly meetings.

81. Defendant's conduct in failing to pay Plaintiff and its other hourly employees the minimum wage and inappropriate claiming of the "tip credit," as set forth above, violates the Ordinance.

WHEREFORE, Plaintiff Alexander Cabot on behalf of himself and all other similarly situated persons, known and unknown, respectfully requests that this Court enter judgment in his favor and enter an Order as follows:

a) Awarding back pay equal to the amount of all unpaid wages for the three (3) years preceding the filing of this Complaint to the present;

b) Awarding treble damages equal to the amount of unpaid wages pursuant to Mun. Cod. Chicago 1-24-110;

c) Awarding prejudgment interest, reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the Chicago Minimum Wage and Paid Sick Leave Ordinance; and

    d)    Awarding Plaintiff such further and additional relief as the Court may deem just and proper.

Dated: April 10, 2018                                    Respectfully submitted,

Bradley Manewith, #6280535                               ALEXANDER CABOT, on behalf of himself
James Rogers, #6324570                                   and all other similarly situated persons, known
Siegel & Dolan Ltd.                                      and unknown,
150 North Wacker Drive, Suite 1100
Chicago, IL  60606
Tel. (312) 878-3210
Fax (312) 878-3211                                       By: /s/ Bradley Manewith
                                                                           Attorney for Plaintiff